**JEFFREY COHN**
ATTORNEY AT LAW
501 FIFTH AVENUE, SUITE 2008
NEW YORK, NEW YORK 10017
JCOHNLAW@HOTMAIL.COM

TEL. 646-201-5202                                                        FAX 646-304-2169

**BY ECF**
Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: United States v. Oscar Romero-La Torre**
**11-CR -810 (DLI)**

Dear Judge Irizarry:

  I respectfully submit this letter to persuade the Court that the proper role enhancement for Mr. Romero-LaTorre pursuant to section 3B1.1 of the United States Sentencing Guidelines is 2 points.

**I.  LEGAL STANDARD**

  Section 3B1.1 provides for the following enhancements for an aggravating role in the offense:

 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
U.S.S.G. § 3B1.1

In assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be considered. U.S.S.G. § 3B1.1 app. n.

  For determining whether the criminal activity was "otherwise extensive." The court in <u>United States v. Carrozzella</u>, 105 F.3d 796 (2d Cir. 1997), held that "otherwise extensive" as used in §3B1.1,requires, at a minimum, "'a showing that an activity is the functional equivalent of an activity involving five or more participants.'" <u>Carrozzella</u> at 803. The sentencing court, must

1

consider "(i) the number of knowing participants; (ii) the number of unknowing participants whose activities were organized or led by the defendant with specific criminal intent; [and] (iii) the extent to which the services of the unknowing participants were peculiar and necessary to the criminal scheme." Id. at 803-04. The second and third factors, the court explained, "separate out" the "service providers who facilitate a particular defendant's criminal activities but are not the functional equivalent of knowing participants" and "[l]awful services that are not peculiarly tailored and necessary to the particular crime but are fungible with others generally available to the public." Id. at 804. The Carrozzella court cautioned that the guidelines' use of the term "otherwise extensive" entails more than mere "head-counting," and that a sentencing court may conclude that the activity was not otherwise extensive even if it involved some combination of at least five knowing and unknown participants. Id. at 804.

In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. U.S.S.G. § 3B1.1. Factors the court should consider include

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

> U.S.S.G. § 3B1.1

The background commentary to this Guideline notes:
> This adjustment is included primarily because of concerns about relative responsibility. However, it is also likely that persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate.

> U.S.S.G. § 3B1.1 cmt. background.

This court has held that [a] defendant may properly be considered a manager or supervisor if he exercise[d] some degree of control over others involved in the commission of the offense . . . or play[ed] a significant role in the decision to recruit or to supervise lower-level participants. United States v. Garcia, 413 F.3d 201, 223 (2d Cir. 2005) (quoting United States v. Burgos, 324 F.3d 88, 92 (2d Cir. 2003)). "[A] defendant need only manage or supervise 'a single

other participant' to warrant a § 3B1.1(c) enhancement." Garcia, 413 F.3d at 223. Moreover, the government must prove the defendant's aggravating role in the offense by a preponderance of the evidence. United States v. Holguin, 436 F.3d 111, 119 (2d Cir. 2006).

## 2. Findings Regarding A Defendant's Aggravating Role In The Offense

A district court must make "specific findings as to why a particular subsection of § 3B1.1 adjustment applies." United States v. Ware, 577 F.3d 442, 451 (2d Cir. 2009), cert. denied, S. Ct. 432 (2010). "[A]lthough a sentencing court may sometimes satisfy its obligation to make findings by adopting the factual statements in the defendant's presence report . . ., adoption of the PSR does not suffice if the PSR itself does not state enough facts to permit meaningful appellate review." United States v. Skys, 637 F.3d 146, 157 (2d Cir. 2011) (quoting Ware, 577 F. 3d at 452).

In United States v. Reyes, 384 F. App'x 37 (2d Cir. 2010), the court upheld a the district court's 2 level enhancement of defendant's role concluding that defendant was "a leader of the charged conspiracy, the district court reasonably relied on evidence that 'defendant' (1) supplied the seized cocaine; (2) negotiated the purchase price of the cocaine and arranged for its transport from New York to New Jersey; (3) "sent his coconspirators to deal with the buyer, ... while he monitored the situation"; and (4) participated in the decision to call off the transaction when "his suspicions were aroused" by the informant's conduct." United States v. Reyes, 384 F. App'x 37, 42 (2d Cir. 2010). In United States v. Williams, 164 F.3d 620 (2d Cir. 1998) the court upheld a two level increase for a defendant who showed evidence of control over the other defendants. In United States v. Williams, 164 F.3d 620*2 (2d Cir. 1998).

> Williams's control over other criminal participants, though crucial and arguably the most important factor, is not the only factor that a sentencing court may consider. See U.S.S.G. § 3B1.1, comment. (n.4) (specifying seven factors, including "recruitment of accomplices" and "degree of participation in planning or organizing the offense", that court is to consider when assessing whether defendant is leader/organizer or manager/supervisor). Again, apart from his recruitment role, Williams dealt with suppliers in Guyana, some of which was captured on tape, concerning the timing of shipments and ultimately controlled payment of couriers and expenses. In United States v. Williams, 164 F.3d 620*2 (2d Cir. 1998).

Moreover in United States v. Arango-Vidal, 127 F. App'x 566 (2d Cir. 2005) where defendant was sentenced in the district court principally to 235 months, the court upheld a 2 level enhancement for defendant's supervisory role. United States v. Arango-Vidal, 127 F. App'x 566, 566 (2d Cir. 2005). The defendant Arnago had

recruited his co-defendant Macias to the criminal activity and had supervised Macias, either of which supported the enhancement under section 3B1.1. We agree with the district court that by introducing Macias to the men in charge of the criminal activity so that Macias could join in the criminal enterprise, Arango recruited Macias within the meaning of section 3B1.1. Moreover, based on the evidence in the record, we conclude that Arango's activities with respect to Macias constitute supervision within the meaning of section 3B1.1.
United States v. Arango-Vidal, 127 F. App'x 566, 566-67 (2d Cir. 2005)

But See U.S. v. Garcia-Babadilla, 199 F.3d 1324 (2d Cir. 1999) (unreported opinion), (where appellate court affirmed a three level sentencing enhancement under U.S.S.G. § 3B1.1(b) to a defendant who had participated in a scheme to import cocaine from Colombia by hiding it in the steel support beams of shipping containers filled with bananas. He supervised five accomplices while overseeing the American side of the operation for his Colombian employers and co-ordinated the receipt, recovery, and distribution of more than 100 kilograms of cocaine. Also, he recruited several of his codefendants.)

Lastly, the Second Circuit has observed that "[t]he Guidelines do not define the term ' supervisor,' " but that the Court has held that a defendant acts as manager or supervisor when "he 'exercise[s] some degree of control over others involved in the commission of the offense,' " or has "a significant role" in recruiting or supervising lower-level participants. Ellerby v. United States, 187 F.3d 257, 259 (2d Cir.1998) (per curiam) (quoting United States v. Liebman, 40 F.3d 544, 548 (2d Cir.1994)). United States v. Caballero, 93 F. Supp. 3d 209, 213-14 (S.D.N.Y. 2015)

As the Court is aware, Defense counsel argued, and probation and the government agreed, that Mr. Latorre should be characterized as a manager or supervisor given his inability to set price, quantity or location of the delivery of the drugs.

Mr. Latorre's information included a sole charge of international cocaine distribution. ( Mr. Latorre turned himself in before any indictment was filed.)   The Government also noted their view that Mr. Latorre's role was a "more minor role than an organizer is simply from the structural view of the organization."  See Sentence Hr'g Tr. Pg. 22-23.

Although according to U.S.S.G. § 3b1.1 "in distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling," defense counsel believes it is  determinative, when said defendant is working at the behest of actual dubbed kingpins' or bosses who direct the actions and make the

4

conspiracy possible. It was the Cartel who controlled the management of the routes from Colombia to the United States.

Mr. Latorre operated outside the cartel without the ability to set price, location or quantity. Mr. Latorre lacked some a modicum of control that leaders generally have The conspiracy was unusually extensive because of the alliances between top cartel members of Los Rastrojos and other designated kingpins. They worked as a "board of directors" over the international distribution activity. So much so that 60 minutes dubbed them the Super Cartel.[1] An ICE agent interviewed for 60 minutes stated that the organization was "run like a sophisticated business, a Fortune 500 company. They had their CEOs. They had their vice presidents," … It had assets worth billions." See Exhibit I-J. He explains why it grew so large was because of a strategy of compartmentalizing its process. "You could be involved in transportation, but you didn't know who the CEOs were or whose cocaine you were smuggling." See Exhibit J.

The bosses of the cartel imposed a specific structure, and a clear delineation of who was in charge and who its leaders were. Mr. LaTorre's appropriate role enhancement under U.S.S.G. §3b1.1 would be characterized as a manager.

Daniel Barrera Barrera

From "1998 until 2010, BARRERA ran a cocaine manufacturing and trafficking syndicate out of Colombia. BARRERA purchased the raw cocaine base or paste from the designated terrorist group Fuerzas Armadas Revolucionarias de Colombia (Revolutionary Armed Forces of Colombia, or the "FARC")". See Exhibit A. After "purchasing the raw cocaine base from the FARC, BARRERA converted the raw cocaine into powder at laboratories he owned and operated in an area of Colombia controlled by the since demobilized terrorist group, Autodefensas Unidas de Colombia (the "AUC")." Id.

Each month, " Barrera processed approximately 30,000 kilograms of raw cocaine base into about the same amount of cocaine powder, resulting in approximately 400 tons of cocaine annually." See Exhibit A In total, "Barrera reaped tens of millions of dollars of profits from cocaine trafficking, which he laundered through illicit means." Id. .

Luis Agustin Caicedo Valendia

---

[1] See https://www.youtube.com/watch?v=I_Ir1RuqdS4. Also See http://www.cbsnews.com/news/colombias-super-cartel-toppled-by-ice-natl-police/

5

According to his indictment, Luis Caicedo Velandia a/k/a "Don Luis," a/k/a Don Lucho," controlled maritime cocaine transportation ventures of multi-ton quantities of cocaine from the North coast of Colombia, South America to various Central American countries with the ultimate destination of the cocaine being the United States." See Exhibit G.

Luis Caicedo Valendia "is a former Colombian police official with close ties to Mexico's feared Sinaloa cartel who is responsible for moving tons of cocaine into the U.S. and laundering billions of dollars in profits." See Exhibit L He is associated and shares an indictment with Julio Alberto Lozano Pirateque AKA "Patico, Claudio Silva Otalora AKA "El Patron" and Daniel Barrera Barrera AKA "El Loco".

Rutdy Alirio Zarate Moreno

Rutdy Alirio Zarate Moreno (a.k.a. "Runcho"), is "one of the key drug trafficking facilitators for Barrera Barrera" See Exhibit D and E.

Javier Antonio Calle Serna

Javier Antonio Calle Serna, also known as "Comba," is the principal leader of "Los Rastrojos." See Exhibit F. Los Rastrojos, "in partnership with Mexican drug cartels, exported multi-ton shipments of cocaine from Colombia to the United States, via Mexico, Venezuela, and other countries in South and Central America." Id. In addition "to exporting their own shipments, Los Rastrojos also charged other Colombian narcotics trafficking organizations a "tax" on shipments of narcotics traveling through territory and coastal areas under Los Rastrojos' control." Id. On June 1, 2011, "President Obama designated defendant Calle Serna a Significant Foreign Narcotics Trafficker under the Foreign Narcotics Kingpin Designation Act (the "Kingpin Act"), implemented by the Treasury Department's Office of Foreign Assets Control." Id.

Juan Fernando Alvarez-Meyendorff

Juan Fernando Alvarez-Meyendorff is the leader of the Mechas Drug Trafficking Organization (DTO), an extensive international narcotics exportation and transportation organization. See Exhibit H. The Mechas DTO uses a variety of maritime conveyances, including fast boast, semi-submersibles, and container ships, to transport cocaine from Colombia to the United States via Mexico and Central America. Id. Since 2005, Alvarez has been allegedly responsible for numerous shipments of cocaine to the United States totaling approximately 68 metric tons. Id. It is believed that Alvarez assisted Colombian drug kingpin Luis Caicedo-Velandia in transporting cocaine and was allegedly paid $46 million for his transportation services. Id. In addition to transporting cocaine, Alvarez is believed to finance drug loads, including the sale of over 10 metric tons of cocaine to Mexican DTOs. Id.

| High profile defendants allegedly attached to conspiracy | | | |
|---|---|---|---|
| Name | Kilos of cocaine and sums of laundered money indicted for | Sentenced | CASE number |
| Luis Agustin Caicedo Valendia AKA "Lucho" The head of the board of the alleged Super Cartel. Former police official who controlled maritime cocaine transportation ventures of multi-ton quantities of cocaine. | $125, 572, 500.00. Over 80,000 Kilos | FMD - 120 months at first sentence. A rule 35 followed reducing to 60 months to time served – convicted for distribution and illegal import and exportation. Pending charges in EDNY on money laundering | 08-cr-00152 – Florida Middle District 10-cr-00288 – Eastern District. |
| Daniel Barrera Barrera AKA " El Loco" Ally of Los Rastrojos and facilitator of cocaine base | $125, 572, 500.00. | FMD and EDNY consolidated to SDNY. Pending charges for International Cocaine Distribution Conspiracy including money laundering. | 10-cr-00228 EDNY 07 Cr. 862 AKH SDNY - 07-cr-00862-GHW |
| Javier Antonio Calle Serna aka "Comba" Principal Leader of Los Rastrojos | Over $70,000,000 Over 64,000 kilos | International Cocaine Distribution charge Pending | 06-cr-00091-SLT EDNY |

| Name | Amount | Sentence | Case |
|---|---|---|---|
| Julio Alberto Lozano Pirateque AKA "Patico" A board member of the alleged Super Cartel | $125,572,500.00. | EDNY 84 months - counts 1 (money laundering) and count 16 - international drug conspiracy - 84 months each count to be served concurrently | 10-cr-00288 EDNY |
| Claudio Silva Otalora AKA "El Patron" A board member of the alleged Super Cartel | $125,572,500.00. | EDNY 108 months - counts 1 (money laundering) and count 16 - international drug conspiracy - 84 months each count to be served concurrently | 10-cr-00288 EDNY |
| Franklin Alain Gaitan Marentes AKA "sergio" | $125,572,500.00. | EDNY 120 months count 17 Attempt/ Conspiracy Narcotics sell distribute | 10-cr-225-sj EDNY |
| Rutdy Alirio Zarate Moreno AKA "Runcho" is one of the key drug trafficking facilitators for Barrera Barrera, | 5300 kilos | Pending International Cocaine Distribution Conspiracy charges | 12-cr-00095 EDNY |

| | | | |
|---|---|---|---|
| Laurentino Venegas Rubiano AKA "Lauro","Pluma" | $125, 572, 500.00. | 30 months count 16 Attempt/Conspiracy Narcotics sell / dispense | 10-cr-225-sj EDNY |
| | | | |
| Rafael Humberto Perilla Alfonso "AKA" Porre Motor" | $125, 572, 500.00. | 48 months count 16 Attempt/Conspiracy Narcotics sell distribute | 10-cr-225-sj EDNY |
| | | | |
| Luis Miguel Cubillos Perez AKA "Reyes" | $125, 572, 500.00. | 60 months count 16 Attempt/Conspiracy Narcotics sell distribute | 10-cr-225-sj EDNY |
| | | | |
| Jairo Alberto Sanchez Bolivar AKA "Pernilito" | $125, 572, 500.00. | 30 months count 16 Attempt/Conspiracy Narcotics sell distribute | 10-cr-225-sj EDNY |
| | | | |
| Ignacio Alvarez Meyendorff | | 84 months for International drug conspiracy Forfeiture order of 10,000,000.00 | 11-cr-00281 -jg |
| | | | |

| Jose Evaristo Linares Castillo He leads a Villavicencio, Colombia based drug trafficking organization that oversees the manufacturing and air smuggling of thousands of kilograms of cocaine from Colombia and Venezuela, through Central America into Mexico, and then, ultimately, into the United States. | | Pending charges for Conspiracy Narcotics Importation Money Laundering | Moved from FLSD to SD 11-cr 20225-FAM-FLSD 13 CR-00862 - RJS - SD |
|---|---|---|---|
| | | | |

When Oscar's participation as a mere transporter is contextualized in light of the foregoing, we submit a 2 point enhancement pursuant to section 3B1.1 is appropriate.

Sincerely

*[signature]*

Jeffrey Cohn

copy/ A.U.S.A. Patricia Notopoulos (by ecf)
U.S.P.O. Michelle Espinosa (by ecf)